**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **FEDERAL TRADE COMMISSION,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-2021** |
| **v.** | * | |
| | * | |
| **MERUCRY MARKETING, LLC, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

The Federal Trade Commission ("FTC" or "Commission") filed this civil enforcement against defendants Mercury Marketing, LLC; Behavioral Healthcare Group of America, LLC ("BHG"); JLux Consulting LLC; Malibu Detox, LLC; Malibu Recovery Center, LLC; Aliya Health Group, LLC; Fennaside, LLC; JHEL Holdings, LLC; Christopher LiVolsi; Dennis Rinker; Robby Stempler; and Jennifer Russ (collectively, the "Defendants"). *See* ECF No. 1 ("Compl."), ¶¶ 10–12. The matter is before the Court on a motion to dismiss filed by defendants LiVolsi, Rinker, Mercury Marketing, and Fennaside (collectively, the "Moving Defendants"). *See* ECF No. 34. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained below, the Moving Defendants' motion is denied.

## I. BACKGROUND

The FTC filed this civil enforcement action on June 24, 2025. *See* ECF No. 1 ("Compl."), ¶¶ 10–12. The Commission alleges violations of Sections 5(a)(1) and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1) & 52; Section 8023(a) of the Opioid

Addiction Recovery Fraud Prevention Act of 2018 ("OARFPA"), 15 U.S.C. § 45d(a); and the Commission's Trade Regulation Rule on the Impersonation of Government and Businesses ("Impersonation Rule"), 16 C.F.R. Part 461. Compl. ¶ 1.

The Complaint describes a two-phase scheme and categorizes the Defendants into three groups. *See id.* ¶¶ 2–4. First, the "Mercury Defendants" consist of LiVolsi, Rinker, Mercury Marketing, and Fennaside. *Id.* ¶ 10. Second, the "Malibu Defendants" include LiVolsi, Rinker, Fennaside, Stempler, Malibu Detox, JHEL Holdings, and BHG. *Id.* ¶ 11. Third, the "Aliya Defendants" are Malibu Recovery Center and Aliya Health Group. *Id.* ¶ 12. According to the FTC, the Defendants "lured consumers to substance use disorder ['SUD'] treatment facilities, including facilities that they themselves owned, using deceptive Google search ads ('Search Ads') and call center telemarketers who have misled callers responding to those ads." *Id.* ¶ 1.

The alleged scheme operated in two stages. First, during the lead-generation phase, the Mercury Defendants created deceptive mobile Search Ads that impersonated specific SUD treatment facilities for which consumers were searching online. *See id.* ¶¶ 2–4. These advertisements displayed phone numbers that appeared to connect consumers to the identified facilities but instead routed calls to the Mercury Defendants' clients. *Id.* Those clients included SUD treatment centers and lead brokers who resold consumer leads to treatment providers. *Id.* The Malibu Defendants allegedly purchased thousands of leads generated through this system, and, beginning in mid-2023, the Aliya Defendants also began receiving such leads. *Id.*

Second, in the telemarketing phase, the Malibu Defendants, through their call center, allegedly continued the deception. Telemarketers purportedly told callers—falsely—that they were affiliated with the facility the consumer had searched for, or with a centralized referral service, and used additional misrepresentations to induce consumers to enroll in treatment

programs. *Id.* The Commission seeks a permanent injunction, civil penalties, and other equitable relief pursuant to Sections 5(m)(1)(A), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(m)(1)(A), 53(b) & 57b, as well as relief under OARFPA. *Id.*

Several defendants have resolved the claims against them. Defendants Russ, JLux Consulting, Stempler, Malibu Detox, JHEL Holdings, and BHG entered into settlements with the FTC. *See* ECF Nos. 30 & 60. Defendants Aliya Health Group and Malibu Recovery Center filed an Answer to the Complaint. *See* ECF No. 33.

Pending before the Court is a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) by the remaining defendants—LiVolsi, Rinker, Mercury Marketing, and Fennaside (collectively, the "Moving Defendants"). *See* ECF No. 34. The Commission has opposed the motion, ECF No. 47, and the Moving Defendants have filed a reply, ECF No. 56.

## II. STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing the pleader is entitled to relief"). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

## III. DISCUSSION

Moving Defendants advance two arguments in support of dismissal. First, they argue that the Complaint fails to clearly identify which factual allegations support each cause of action because the counts do not expressly incorporate the general allegations by reference, while selectively citing certain paragraphs within the counts themselves. ECF No. 34-1 (Defs. Mem.) at 3–4. According to Moving Defendants, this pleading structure makes it unclear "which general allegations support which claim for relief, if any." *Id.* Second, Moving Defendants argue that the Complaint improperly groups Defendants together—particularly because certain Defendants appear in both the "Mercury Defendants" and "Malibu Defendants" categories—thereby creating confusion as to which allegations apply to which parties. *Id.* at 4. Based on these asserted deficiencies, Moving Defendants maintain that the Complaint fails to articulate the claims against them with sufficient clarity to permit a responsive pleading. *Id.* at 3. For the reasons explained below, Moving Defendants' arguments are unpersuasive.

### A. The Counts in the Complaint are Sufficiently Clear.

Moving Defendants argue that the Complaint is confusing because it is not clear "which general allegations support which" of the Complaint's seven Counts, and because the Counts "do not expressly incorporate by reference any of the preceding allegations" by paragraph number. Defs.' Mem. at 3–4. To begin, there is no requirement that counts in a civil complaint refer to, or expressly incorporate, preceding allegations by paragraph number. *See Baxter v. Amerihome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 351 (D. Md. 2022) (noting that "nothing requires" factual allegations in a complaint to be "specifically realleged under each relevant cause(s) of action"). Rather, it is "customary" for a complaint to contain "a fact-based recitation, followed by the causes of action it alleges, with enough explanation within each cause of action to tie the factual allegations to the alleged violations of law." *Id.*

That is what FTC's Complaint here does. The Complaint includes sections entitled Summary of the Case (¶¶ 2–6), Jurisdiction and Venue (¶¶ 7–8), Plaintiff (¶ 9), Defendants (¶¶ 10–28), Commerce (¶ 29), and Defendants' Business Activities (¶¶ 30–74), followed by seven separately labeled and numbered Counts grouped as alleged violations of the FTC Act (¶¶ 75–85), the OARFPA (¶¶ 86–99), and the Impersonation Rule (¶¶ 100–105), sections entitled Consumer Injury (¶¶ 106–07) and Civil Penalties (¶¶ 108–13), and a Prayer for Relief. The "Defendants' Business Activities" section contains detailed factual allegations describing the alleged two-part scheme, including subsections entitled "The Lead Generation Phase – the Mercury Defendants' Deceptive Search Ads" (¶¶ 30–45), and "The Telemarketing Phase – Two 'Fronters' and a 'Closer'" (¶¶ 46–63).

Each Count clearly identifies the statute or regulation under which it is brought and the Defendants against whom it is asserted. *See* Compl. ¶¶ 75–105. For example, Count I is labeled "Count I – Deceptive Lead Generation Ads (Mercury Defendants)" and alleges violations of Sections 5(a) and 12 of the FTC Act by Mercury Defendants. *See* Compl. ¶¶ 76–79. Count II is labeled as "Count II – Deceptive Lead Generation Ads (Malibu Defendants and Aliya Defendants)" and also alleges violations of Sections 5(a) and 12 of the FTC Act by Malibu Defendants and Aliya Defendants. *See* Compl. ¶¶ 79–82. Each Count contains a brief description of the conduct at issue which corresponds to the Complaint's preceding factual allegations. For example, the allegations in the "Lead Generation Phase" subsection (¶¶ 30–45) align with Counts I and II under the FTC Act and Counts IV and V under OARFPA, all of which concern allegedly deceptive lead-generation advertisements. Likewise, the allegations in the "Telemarketing Phase" subsection (¶¶ 46–63) correspond to Count III in the section on FTC Act violations and Count VI in the section on OARFPA violations, which concern allegedly deceptive telemarketing practices.

Count VII, brought under the Impersonation Rule, similarly tracks the allegations that the Mercury Defendants deceived consumers by posing as specific SUD treatment facilities for which consumers had searched online. *See id.* ¶ 104.

Moving Defendants nevertheless argue that because certain paragraphs are expressly referenced within particular Counts, "a reasonable reader would understand that unreferenced allegations should not be read in the counts." ECF No. 56 at 1–2. They cite no authority for that proposition, and the Court is not persuaded. Read as a whole, the Complaint plainly sets forth a factual narrative supporting the asserted claims and specifically describing each Moving Defendant's role and involvement. A reasonable reader would not interpret the Complaint to mean that factual allegations discussed in the detailed "Business Activities" section become irrelevant merely because its paragraphs are not expressly cited or incorporated into every Count by number. Such a reading would irrationally elevate form over substance and disregard the requirement that pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e). Reading the Complaint as a whole makes the factual grounds for the FTC's claims sufficiently clear.

**B. The Complaint Does Not Employ Improper Group Pleading.**

Next, the Moving Defendants argue that the FTC's Complaint constitutes an impermissible "shotgun pleading" because it "groups the same defendants in two groupings and then alleges that the two groupings engaged in conduct together." ECF No. 56 at 2. According to Moving Defendants, this structure makes it "impossible to formulate a meaningful response." *Id.* at 3. The Court disagrees.

As an initial matter, Moving Defendants did not seek relief under Rule 12(e), which permits a party to move for a more definite statement where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). That omission is notable given the nature of their grievance.

More importantly, the FTC's Complaint does not fail to articulate claims with sufficient clarity and therefore is not a shotgun pleading. "[T]he Federal Rules of Civil Procedure do not countenance . . . 'shotgun pleading.'" *Lee v. Meyers*, Civ. No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022). "A 'shotgun pleading' is one that 'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief[.]" *Baxter v. AmeriHome Mortg. Co.*, LLC, 617 F. Supp. 3d 346, 351 (D. Md. 2022) (quoting *Lee*, 2022 WL 252960, at *11). Courts have found complaints to constitute shotgun pleadings where "multiple claims [are asserted] against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against[,]" *Doe v. Wyndham Hotels & Resorts*, Inc., No. 2:24-CV-204, 2025 WL 725268, at *10 (E.D. Va. Mar. 6, 2025) (citation and internal quotation marks omitted); where material allegations are "buried beneath numerous pages of rambling irrelevancies," *Negron-Bennett v. McCandless*, No. 13-cv-387, 2013 WL 3873659, at *4 (E.D. Va. July 24, 2013); or where key statements are "not connect[ed]" to the defendant, *Blackford-Webb v. Global Scholars Academy*, No. 24-cv-1071, 2025 WL 2532793, at *8 (M.D.N.C. Sept. 3, 2025). A complaint that alleges a factual basis for each claim asserted against each defendant and the relief sought complies with Rule 8 and is not a "shotgun pleading." *See Beyond, Inc. v. Asset Store, LLC*, Civ. No. JRR-24-01555, 2025 WL 1865770, at *5 (D. Md. July 7, 2025). "'[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts [them] that identical claims are asserted against each.'" *Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 815 n.1 (D. Md. 2015) (quoting *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13–639, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015)). Although there are circumstances in which indiscriminately grouping

defendants together is improper, where "the defendants are all alleged to have participated in a scheme involving the same conduct[,] it is appropriate to group the defendants together." *Sprint Nextel Corp. v. Simple Cell, Inc.*, Civ. No. 13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013).

In this case, the Complaint clearly defines and describes conduct undertaken by two groups of Defendants that are relevant here: the Mercury Defendants and the Malibu Defendants. The Mercury Defendants—Mercury Marketing, Christopher LiVolsi, Dennis Rinker, and Fennaside—are alleged to have carried out the lead-generation phase of the scheme by creating deceptive search advertisements that impersonated specific SUD treatment facilities and routed consumers to the Defendants' clients. Compl. ¶¶ 3, 10, 13, 19, 21–24, 30–45, 67–68, 73. The Malibu Defendants include Malibu Detox, a company that operated SUD treatment facilities and coordinated intake and marketing support services for those facilities; BHG, the affiliated call center that received leads generated by the Mercury Defendants' advertisements; and individuals associated with those entities, including LiVolsi, who co-owned Malibu Detox through the holding company Fennaside, and Rinker, who co-owned Mercury Marketing. These defendants are alleged to have conducted the telemarketing phase of the scheme by misleading callers and steering them away from the facilities they originally sought in favor of Malibu Detox. *Id.* ¶¶ 4, 11, 46–63, 66–72.

Certain defendants—namely, LiVolsi, Rinker, and Fennaside—are included in both groups. The Complaint explains why: they are alleged to have played roles in both phases of the scheme. Specifically, LiVolsi and Rinker are among the Mercury Defendants because they are alleged to be the owners of Mercury Marketing and to have been responsible for the Mercury Defendants' alleged lead generation conduct. And Fennaside is among the Mercury Defendants

because it is alleged to be the entity through which LiVolsi received management fees for his Mercury Marketing work. *See id.* ¶¶ 10, 13, 19, 21–24. LiVolsi, Rinker, and Fennaside are also among the Malibu Defendants because they are alleged to have had ownership or financial interests in Malibu Detox (with LiVolsi's interest allegedly held through Fennaside) and to have directly participated in the alleged telemarketing activities attributed to the Malibu Defendants. *Id.* ¶¶ 11, 19, 21–24, 54–61, 68–70.

The "Defendants' Business Activities" section of the Complaint contains a detailed set of factual allegations describing acts taken by the Mercury Defendants and the Malibu Defendants during the two stages of the alleged scheme. This section describes involvement in both phases of the two-phase scheme by LiVolsi and Rinker, *e.g.*, *id.* ¶¶ 30, 54, 55, 57, 58, 60, 61; their company Mercury Marketing, *e.g.*, *id.* ¶¶ 39, 41, 42, 45; and Malibu Detox, *e.g.*, *id.* ¶¶ 42, 50, 52–54, 65, 66, a company LiVolsi owned through Fennaside, *see id.* ¶¶ 16, 19. Determining which allegations apply to each Defendant does not require guesswork. As the FTC observes, a defendant need only review the allegations referencing that defendant by name, as well as the allegations pertaining to any group to which that defendant is alleged to belong. *See* ECF No. 47 at 7.

The sole case on which Moving Defendants rely—*Jackson v. Early Warning*, Civ. No. 15-1233, 2016 WL 520947 (D. Md. Feb. 5, 2016)—does not support their position. There, a pro se complaint was "incomprehensible," "largely incoherent," and devoid of meaningful factual allegations; it contained no numbered counts and failed to attribute any conduct to specific defendants. *Id.* at *1, 5. The Complaint here bears no resemblance to the one described in *Jackson*. The FTC's Complaint in this case sets forth detailed and clear factual allegations describing a coordinated scheme, delineates the roles of each Defendant, and organizes those allegations into specific counts tied to particular conduct.

In short, the Complaint provides more than sufficient detail to allow Moving Defendants to frame a responsive pleading. Their "shotgun pleading" argument therefore fails.

## IV. ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland, hereby ORDERED that Moving Defendants' Motion to Dismiss (ECF No. 34) is DENIED.

It is so ORDERED this 21st day of August, 2026.

/S/
Matthew J. Maddox
United States District Judge